On respondent's motion to vacate and remand filed July 17, 1998, appeal dismissed
March 31, 1999

## RONALD M. BARNES,
*Appellant,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## (97C-10037; CA A100361)

977 P2d 431

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Erika L. Hadlock, Assistant Attorney General, for motion.

Steven H. Gorham *contra*.

Before Haselton, Presiding Judge, and Landau and Armstrong, Judges.

LANDAU, J.

Armstrong, J., dissenting.

## LANDAU, J.

Plaintiff petitioned for habeas corpus relief, alleging that the Board of Parole's (Board) extension of his projected parole release date for two years violated the *ex post facto* provisions of the state and federal constitutions. He sought release from prison. The trial court ruled against plaintiff and dismissed the writ. Plaintiff appealed the trial court's decision. During the pendency of the appeal, plaintiff was paroled from prison.

The state argues that the appeal has been mooted by plaintiff's release. Plaintiff responds that the case is not moot because collateral consequences flow from the Board's failure to parole him two years earlier than it did. He argues that, had he been released earlier, he would no longer be subject to the conditions of parole because the order of release indicated that his minimum term of active supervision would be 36 months. For the following reasons, we agree with the state that no justiciable controversy exists, and we dismiss the appeal.

■ We do not agree with plaintiff's suggestion that he would be free from the conditions of his parole had he been released earlier. Unlike the post-prison supervision system, which provides set periods of post-prison supervision for released inmates, the parole system allows the Board to release an inmate who has not finished serving his or her indeterminate prison sentence, and that person may be kept on parole until the sentence expires. Thus, a person serving a 10-year indeterminate sentence who was paroled after five years could be kept on parole for another five years, whereas a person serving a 10-year indeterminate sentence who was paroled after seven years could be kept on parole only for another three years. In short, there is no direct correlation between when one is paroled and when one's parole terminates. Plaintiff's sentences on multiple counts of rape and incest will not expire until April 2035, and he may be kept on parole until that time. That date is not dependent in any way on whether he was released on parole in 1995 or 1997.

■ There is, however, a possibility that a parolee might be changed from active parole supervision status to inactive

parole supervision status, based on when he or she is paroled. In plaintiff's case, the release order indicates that he will be under active supervision "for 36 months, or to the sentence expiration date. Extension of the active supervision period is contingent on a recommendation from the supervising officer or Board approval." A change from active to inactive supervision status does not relieve a parolee of his or her responsibility to abide by the conditions of parole. Several of the conditions of parole, however, such as payment of supervision fees and the requirement to seek written permission before leaving the state, do not remain in effect when a parolee is changed to inactive supervision. *See generally* OAR chapter 255, division 94 (describing active and inactive supervision). The question, then, is whether the potential for an earlier transition from active to inactive supervision status somehow prevents an otherwise moot case from being considered moot.

██ A justiciable controversy exists where "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). Even if the main issue in a controversy has been resolved, collateral consequences *may* prevent the controversy from being moot under some circumstances. In *Brumnett*, the petitioner challenged his commitment to the jurisdiction of the Psychiatric Security Review Board (PSRB), but was released during the pendency of his action. He argued that his release did not moot his case because of a potential collateral consequence, that the state could seek to recoup the costs of his confinement pursuant to a statute making people within PSRB's jurisdiction "liable for the full cost of care" depending on their ability to pay. *Id.* at 406-07. The court held, however, that the "mere possibility" that the state would seek to recoup the costs of the petitioner's care did not prevent the case from becoming moot on the petitioner's release.

The rationale of *Brumnett* leads us to the conclusion that this case, too, is moot. The relief that plaintiff initially sought, release from prison, has already occurred. Plaintiff suggests no other relief that might be appropriate should he prevail on the merits, and the only other potential relief that we can imagine would be something along the lines of instructing the Board to consider plaintiff for a transition to

inactive supervision status at an earlier date. It would not be appropriate for this court to *order* plaintiff to be placed on inactive supervision, because that is clearly a decision that is left to the discretion of the Board, based on how the parolee has done on active supervision.

Given the nature of the parole system, as described above, we do not believe that the "mere possibility" that the Board might have changed an inmate from active to inactive supervision status and thus relieved the inmate from several conditions of parole is the type of collateral consequence that would prevent a habeas corpus claim that a plaintiff is entitled to immediate release from prison from becoming moot when the plaintiff is released from prison.

The dissent mischaracterizes the holding of *Brumnett* as being based on a rationale that "it was only possible, not probable, that the state would seek to require the petitioner to pay for care for the disputed period." 159 Or App at 389. The case does not discuss how "probable" it was that the state would seek to recoup its costs. The opinion first quoted the relevant statute, which provided that the petitioner " '*is* liable for the full cost of care.' " *Brumnett*, 315 Or at 406 (emphasis added) (quoting ORS 179.620(1)). The court went on to note, though, that there were provisions "for waiver of collection of any amount declared payable" under certain circumstances. *Id.* at 407. Given that the state was not, at the time the case was decided, attempting to require the petitioner to pay for his care, the court held that the "fact that it *might* do so in the future" did not prevent the case from being moot. *Id.* (emphasis added). The court did not speculate on how "probable" it was that the state would seek to recoup its costs at some point.

*Brumnett* is virtually identical to the present case: In *Brumnett*, the court could not know if there would be a "waiver of collection" of any amount the petitioner was liable to pay pursuant to the statute; likewise, in this case, we can not know if there would be a change from active to inactive supervision, given that the Board has discretion to determine whether a person will be changed to inactive supervision.

Finally, plaintiff argues that "some cases that would normally be moot can still be considered by the Court if the 'defendant's acts are capable of repetition, yet evading

review' and are matters of 'public importance.' " The case that plaintiff cites for this proposition, *Barcik v. Kubiaczyk*, 321 Or 174, 895 P2d 765 (1995), mentioned the "capable of repetition, yet evading review" exception to mootness in an extended discussion of how the court had *repudiated* the application of that exception under Oregon law in a long line of cases. "Oregon does not recognize the 'capable of repetition, yet evading review' doctrine." *Pham v. Thompson*, 156 Or App 440, 445, 965 P2d 482 (1998).

Appeal dismissed.

**ARMSTRONG, J.,** dissenting.

I disagree with the majority's conclusion, based largely on *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), that plaintiff's appeal is moot. I believe that collateral consequences do flow from the decision of the Board of Parole and Post-Prison Supervision to extend plaintiff's parole release date and that the majority is incorrect in concluding that *Brumnett* controls this case.

The majority cites *Brumnett* for the proposition that the "mere possibility" that a party will suffer a collateral consequence as a result of an erroneous decision is not enough to prevent a case involving that decision from otherwise being moot. *Brumnett* involved a challenge to a Psychiatric Security Review Board (PSRB) decision to deny the petitioner a release from its jurisdiction. While Supreme Court review of that decision was pending, the PSRB unconditionally released the petitioner. The state then moved to dismiss as moot the review of the decision denying release. The petitioner opposed the motion, arguing that his release had not mooted his challenge to the decision denying release because he was subject to an obligation under state law to pay the cost of his care while under PSRB jurisdiction. If the Supreme Court concluded that the PSRB had erred in its initial decision to deny release, its ruling on that issue arguably would relieve the petitioner of the obligation to pay the state for care while it wrongfully held him under PSRB jurisdiction. Hence, the PSRB decision to deny release, if allowed to stand, would have a collateral consequence to the petitioner notwithstanding his later release.

The court rejected that argument and granted the state's motion to dismiss. In doing so, it examined the process by which the state would pursue a claim for reimbursement for the cost of care and concluded, on the record before it, that it was only possible, not probable, that the state would seek to require the petitioner to pay for care for the disputed period. It held that that possible consequence of the PSRB decision to deny release was insufficient to prevent the challenge to that decision from becoming moot on the petitioner's release.

On the record in this case, I believe that it is probable, not merely possible, that plaintiff would be shifted from active to inactive parole supervision two years earlier than he will be if it turns out that the Board erroneously extended his parole release date by two years. Consequently, in contrast with *Brumnett*, plaintiff's challenge to the Board's decision to extend his release date has not become moot as a result of his later release from prison, because the extension decision will have the collateral consequence of keeping him on active parole supervision for two years longer than he otherwise would be.[1]

OAR 255-094-0000(3) provides that "[u]pon completion of the specified period of active parole or post-prison supervision, the supervisory authority *shall* place the offender on inactive supervision status subject to the exceptions in OAR 255-094-0010." (Emphasis added.) The exceptions in the latter rule provide that, before the expiration of the active supervision period, the supervising officer *may* submit a report to the Board requesting continuation of active supervision. After reviewing the report, the Board *may* order the offender to remain on active supervision. Those rules treat retention of an offender on active supervision beyond the specified period as the exception rather than the rule. The Board has not presented evidence to show that it

---

[1] There are meaningful distinctions between the two types of supervision. Parolees on inactive supervision are not required to pay supervision fees and are allowed to leave the state without permission and to change their employment or residence without prior permission. OAR 255-094-0010(4). Those differences are significant and represent a substantial lessening of the restraints on a parolee. Hence, it is a meaningful consequence to a parolee to be continued on active parole supervision longer than he should be.

extends active supervision beyond the specified period for most parolees or that plaintiff's circumstances are such that it likely would do so for him. Without that showing, and in light of the relevant rules, I do not believe that the state has carried its burden to establish that the case is moot. *See Brumnett*, 315 Or at 407 (state's burden on motion to dismiss as moot includes burden to establish that decision will *not* have collateral consequences). I therefore dissent from the decision to grant the state's motion to dismiss plaintiff's appeal as moot.