Carl D. McQUILLION, Petitioner–
Appellee,

v.

William DUNCAN, Warden,
Respondent–Appellant.

No. 03–55702.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 28, 2003.*

Filed Sept. 5, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Julie L. Garland, Office of the California Attorney General, San Diego, CA, for the respondent-appellant.

Monica Knox, Federal Public Defender's Office, Los Angeles, CA, for the petitioner-appellee.

Before: WARDLAW and W. FLETCHER, Circuit Judges, and WHYTE,** District Judge.

## OPINION

WILLIAM A. FLETCHER, Circuit Judge.

Petitioner–Appellee Carl D. McQuillion was convicted in 1973 of two counts of murder and sentenced to seven years to life. In 1979, the Board of Prison Terms[1]

---

** The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

1. At the time, the California parole authority was known as the Community Release Board.

("the Board") found McQuillion suitable for parole and set a parole date of October 7, 1998. At each of six progress hearings after the initial grant of parole, McQuillion's parole date was advanced for good behavior by four months for every year served. However, at a final progress hearing in May 1994 a panel of the Board refused to advance McQuillion's parole date, even though there was no question about his continuing good behavior. If the panel had advanced the date, as the previous six panels had done, he would have been immediately released. Instead, the panel referred the case to the full Board, which voted to hold a rescission hearing. In September 1994, a panel of the Board found "good cause" to rescind the grant of parole and voted to rescind McQuillion's parole date as improvidently granted.

After exhausting his California remedies, McQuillion sought a writ of habeas corpus in federal court. The district court denied the writ, but we reversed that decision on appeal. *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir.2002)[hereinafter *McQuillion I*]. We held that McQuillion "had a constitutionally protected interest in freedom from confinement in accordance with the substantive criteria established by the State that would require release or permit rescission." *Id.* at 903. Because none of the grounds relied on by the Board in its rescission determination was supported by "some evidence," we held that McQuillion's due process rights were violated when his parole was rescinded as improvidently granted. *Id.* at 906. We rejected, as unsupported by "some evidence," the Board's findings that the panel that initially granted McQuillion's parole had failed adequately to consider the gravity of his offense, his prior criminal history, and ambiguous psychiatric reports. *Id.* at 906–11. We also rejected, as unsupported by "some evidence," the Board's determination that McQuillion's lack of vocational training constituted "good cause"

for rescission of parole. We noted, among other evidence, that the prison warden at San Quentin had stated that he had "observed more growth and potential in Carl McQuillion ... than [in] any other inmate in my career at Corrections." *Id.* at 911. We remanded to the district court with instructions to "grant the writ." *Id.* at 912.

On remand, the district court granted judgment and ordered McQuillion immediately released from prison. Respondent–Appellant William Duncan ("the Warden") entered no opposition prior to the court's entry of judgment. Before McQuillion's actual release, however, the Warden asked the court to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). The Warden asked the court to order, in lieu of immediate release, that the Board of Prison Terms grant McQuillion a new rescission hearing. The district court denied the motion. *McQuillion v. Duncan*, 253 F.Supp.2d 1131 (C.D.Cal. 2003). It found that we had directed it to grant unconditionally McQuillion's petition for a writ of habeas corpus and that it was therefore required to order McQuillion's immediate release. The court then stayed its judgment to allow the Warden time to appeal. *Id.* at 1132–33.

■ The Warden now appeals the district court's denial of his Rule 59 motion. A Rule 59 motion should not be granted "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (internal quotation marks and emphasis omitted). We review a district court's denial of a Rule 59(e) motion for abuse of discretion. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001). We find none.

The Warden claims that the district court should not have ordered the immediate release of McQuillion pursuant to our direction to the district court that it "grant the writ." *McQuillion I*, 306 F.3d at 912. The Warden does not assert either that there is "newly discovered evidence" or that there has been "an intervening change in the controlling law." Rather, the Warden claims that the district court committed "clear error." We disagree.

■ The district court properly interpreted our direction in *McQuillion I*. McQuillion had petitioned for his immediate release in the district court and had appealed to us the denial of that petition. We reversed the district court and directed that it "grant the writ" on remand. The district court properly interpreted this instruction to mean that it should grant the relief sought by McQuillion and order his immediate release. The district court thus did not err—and certainly did not clearly err—in so understanding our direction.

■ The Warden urges us to revisit the correctness of our decision in *McQuillion I*. With the case in its present posture, we do not believe that the correctness of our earlier decision is before us. However, even if it were, we would reject the Warden's arguments.

The Warden argues that, at a minimum, McQuillion should not be released immediately without an accompanying three-year period of parole. This argument overlooks the fact that if McQuillion had been released on the date to which he was entitled, he would have been released in May 1994. The three-year parole, which he would have been required to serve if he had been released on time, has long since expired.

■ The Warden also makes the linked arguments that McQuillion should be remanded to the Board for a new rescission hearing, and that an order for his immediate release deprives the Governor of his right to review a parole decision under California Penal Code § 3041.1. These arguments mistake the nature of the 1994 rescission hearing. The question before the Board in 1994 was whether in 1979 the Board had "improvidently granted" a parole date to McQuillion. There is no reason to remand to the Board to reconsider that question, given that the evidence in the 1994 hearing pertained to the entirely historical question of what the Board had done in 1979; given that the same evidence as in 1994 would be before the Board on remand; and given that we held in *McQuillion I* that the Board in 1994 had improperly found, based on that evidence, that the parole date had been improvidently granted in 1979.

■ Further, an order of immediate release does not meaningfully deprive the Governor of his power under California Penal Code § 3041.1 to request that the Board review "any decision concerning the grant or denial of parole." In an analogous situation, the California Court of Appeal recently declined to remand to the Governor after the court reversed the Governor's decision under § 3041.2 finding a prisoner ineligible for parole. The court explained that because of the limited nature of the Governor's power, a remand would be futile.

Although the *Board* can give the prisoner a new hearing and consider additional evidence, the *Governor's* constitutional authority is limited to a review of the materials provided by the Board. Since we have reviewed the materials that were before the Board and found no evidence to support a decision other than the one reached by the Board, a remand to the Governor in this case would amount to an idle act.

*In re Smith,* 109 Cal.App.4th 489, 507, 134 Cal.Rptr.2d 781 (2003) (citations omitted). In this case, the Governor could request the Board to reconsider whether the Board in 1979 had improvidently granted a parole date, but this is precisely the question the Board decided in 1994. For the reasons recounted above, a request to the Board that it reconsider that question would serve no purpose.

Finally, without pointing to any evidence in the record, the Warden argues that McQuillion has "continuously been found a danger to society." The evidence belies this irresponsible hyperbole. There has been no finding—let alone a continuous series of findings—of dangerousness in almost a quarter of a century. Based in part on a conclusion of non-dangerousness, the Board in 1979 found McQuillion suitable for parole and set a fixed future parole date of 1998. In six subsequent progress hearings, the Board advanced McQuillion's release date because of credits earned through good behavior. Not until 1994, when McQuillion was about to be released, did the Board change its mind; and it did so without any evidence of dangerousness beyond the crime for which McQuillion was originally convicted, which had been fully considered by the Board in 1979.

The order of the district court denying the motion to amend the judgment, granting the writ of habeas corpus, and ordering the immediate release of McQuillion is **AFFIRMED.**