Carl D. McQUILLION; Willie B. Thomas; Michael Milan; Robert L. Polete; Minh Nguyen; Lloyd Garcia; Frank Juan Rivera; Raymond Rogers; Keith E. Wiggins; Dennis E. Riney; Alfredo Hernandez Cruz; Jessie L. Davis; Roger Brown; Sebastian Llorente; Thomas Wells; Randall Cowans; Zachary Lilliard; Donald Ray Washington, # C–12677, Plaintiffs–Appellants,

v.

Arnold SCHWARZENEGGER;* Pete Wilson; Bill Lockyer, Attorney General; Dan Lungren; Robert Presley; Joe Sandoval; James W. Nielsen, Chairman; John W. Gillis; Ted Rich; Lewis Chartrand, Defendants–Appellees.

No. 01–16037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed May 19, 2004.

---

* Arnold Schwarzenegger is substituted for his predecessor, Gray Davis, as Governor for the State of California. *See* Fed. R.App. P. 43(c)(2).

Steve M. Defilippis, Picone & Defilippis, San Jose, CA, for the plaintiffs-appellants.

Michael J. Williams, Deputy Attorney General, Sacramento, CA, for the defendants-appellees.

Before CUDAHY,** GOODWIN, and KLEINFELD, Circuit Judges.

** Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

GOODWIN, Circuit Judge.

Carl McQuillion ("McQuillion") and his co-plaintiffs ("co-plaintiffs") appeal the dismissal of their civil rights complaint against the Board of Prison Terms (the "Board") and the Governor of California, *inter alia*, for allegedly administering California's parole statutes to achieve an unwritten, unconstitutional policy of denying parole to inmates convicted of certain offenses. We affirm.

## I.

In 1979, following a 1973 conviction for murder, the Community Release Board, as the Board was named at the time, found McQuillion suitable for parole. The Board moved up his parole date at six hearings over fifteen years. But in 1994, sitting en banc, the Board reversed the 1979 parole suitability determination.[1] In 1996, before commencing the present action, McQuillion filed a complaint ("1996 complaint") under 42 U.S.C. § 1983 against members of the Board, alleging that the Board had rescinded his parole date to further then Governor Wilson's policy of denying parole to inmates convicted of murder. He sought monetary damages as well as injunctive and declaratory relief.

In September 1996, the district court dismissed the claim for damages, ruling that parole board members are entitled to

absolute immunity.[2] In March 1998, the court granted the defendants' motion for summary judgment on the claims for injunctive and declaratory relief because McQuillion had not stated a cognizable claim under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). We affirmed in an unpublished opinion: "Because McQuillion's claim, which challenges the policies and procedures of the Board of Prison Terms as well as the constitutionality of various California statutes, would necessarily imply the invalidity of his continuing confinement, it is not cognizable under § 1983."

In May 1998, McQuillion filed a petition for a writ of habeas corpus, alleging that the Board's rescission of his parole date violated his due process rights. The district court denied the petition, but we reversed in September 2002, holding that "McQuillion is ... entitled to habeas relief on the grounds that his parole rescission violated due process." *McQuillion I*, 306 F.3d at 912. After further litigation, McQuillion was released. *See McQuillion v. Duncan*, 253 F.Supp.2d 1131, 1132–33 (C.D.Cal.2003) (ordering release but staying judgment); *McQuillion v. Duncan*, 342 F.3d 1012, 1016 (9th Cir.2003) (affirming judgment of release) ("*McQuillion II*").

While McQuillion's habeas litigation was pending, he and co-plaintiffs, all of whom

---

**1.** We discuss in more detail the rescission of McQuillion's parole date in *McQuillion v. Duncan*, 306 F.3d 895, 898–99 (9th Cir.2002) ("*McQuillion I*").

**2.** The district court states that McQuillion's 1996 damages claim had been dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The record does not support this finding, nor does the dismissal order, of which we take judicial notice. *See* Fed.R.Evid. 201(f); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir.2002). Within the record, the opinion granting summary judgment for defendants on McQuil-

lion's 1996 complaint includes a footnote stating that "his claim for money damages was dismissed because parole board members are absolutely immune from liability for damages...." *McQuillion v. Nielsen*, No. CIV S–96–0507 DFL DAD P, slip op. at 5 n. 2 (E.D.Cal. Feb. 13, 1998) (Findings and Recommendations adopted in full March 24, 1998). The actual order dismissing the damages claim relies on absolute immunity without mention of *Heck*. *See McQuillion v. Nielsen*, No. CIV S–96–0507 DFL GGH P, slip op. at 2 (E.D.Cal. Sept. 25, 1996).

were serving life sentences with the possibility of parole for offenses of kidnapping, attempted murder, or first or second degree murder, filed the present action pro se, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, against then Governor Gray Davis, former Governor Pete Wilson, California Attorney General Bill Lockyer, members of the Board, and other state officials charged with administering parole in California. The essence of the eighteen claims raised by plaintiffs is that Governor Davis conspired with the other defendants to deny parole to inmates serving life sentences by abusing state statutes that authorize him to be involved with parole, namely California Penal Code §§ 3041.1, 3041.2, and 5075. They seek compensatory and punitive damages in addition to various forms of injunctive and declaratory relief aimed at removing the Governor from the parole process or ordering him to comply with the state statutes. The complaint disclaims any relief "in the form of action that implicates the continuing validity of their confinement."

In May 2001, the district court dismissed McQuillion's claims as barred by collateral estoppel, dismissed co-plaintiffs' claims for money damages under *Heck* and dismissed co-plaintiffs' claims for prospective relief as seeking redress that no federal court could provide. Alternatively, the court ruled that co-plaintiffs had not exhausted their administrative remedies and, therefore, could not pursue declaratory or injunctive relief. The court found that co-plaintiffs' damages claims need not be exhausted because no administrative process could provide such a remedy.

## II.

■ We begin by considering *sua sponte* whether McQuillion's successful habeas petition and subsequent release render his § 1983 action moot. *See Bernhardt v. County of Los Angeles,* 279 F.3d 862, 871 (9th Cir.2002). "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *See Porter v. Jones,* 319 F.3d 483, 489 (9th Cir.2003) (quoting *Clark v. City of Lakewood,* 259 F.3d 996, 1011 (9th Cir.2001)). McQuillion's release extinguishes his legal interest in an injunction because it would have no effect on him. *See Bernhardt,* 279 F.3d at 871.

■ Similarly, although in some instances declaratory relief may exist after injunctive relief becomes moot, *see, e.g., Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), McQuillion's claim for declaratory judgment also cannot proceed. A judicial pronouncement, as it would relate to McQuillion, would be an advisory opinion, which the Constitution prohibits. *See* U.S. Const. art. III; *see also Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). Moreover, considered in conjunction with his claim for damages, declaratory judgment without the possibility of prospective effect would be superfluous. *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir.1997).[3]

■ McQuillion's claims for damages are not moot, however. "If [plaintiff] is entitled to collect damages in the event that it succeeds on the merits, the case

---

**3.** We note that McQuillion and co-plaintiffs are not a certified class, nor have they sought to be certified as a class. We have also considered and found no application for the "capable of repetition, yet evading review" exception to mootness. *See Bernhardt,* 279 F.3d at 871–72; *cf. Spencer v. Kemna,* 523 U.S. 1, 17–18, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). McQuillion has not shown that he will appear again before the Board while serving a life sentence, much less that the Board's ruling could not be reviewed in that event.

does not become moot even though declaratory and injunctive relief are no longer of any use." *See Z Channel Ltd. P'ship v. Home Box Office, Inc.,* 931 F.2d 1338, 1341 (9th Cir.1991); *Bernhardt,* 279 F.3d at 872. McQuillion's complaint seeks one million dollars in compensatory damages and five million dollars in punitive damages from each defendant. Construing the allegations in the complaint as true, as we must on review of a Rule 12(b)(6) dismissal, we conclude that his damages claims remain justiciable, subject to defenses.

## III.

■ We first consider whether collateral estoppel is a defense. We review de novo the application of collateral estoppel. *See United States v. Real Prop. Located at 22 Santa Barbara Drive,* 264 F.3d 860, 868 (9th Cir.2001).

McQuillion contends that, unlike his earlier complaint, his present complaint does not imply the invalidity of his sentence or seek damages to redress past injury. To the extent the issues are identical and collateral estoppel would otherwise apply, he argues that he has now complied with *Heck* by overturning the Board's rescission of his parole and his suit can now proceed.

■■ Where a federal court has decided the earlier case, federal law controls the collateral estoppel analysis. *Trevino v. Gates,* 99 F.3d 911, 923 (9th Cir.1996). Three factors must be considered before applying collateral estoppel: " '(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.' " *Id.* (quoting *Town of N. Bonne-*

*ville v. Callaway,* 10 F.3d 1505, 1508 (9th Cir.1993)) (alteration in *Callaway* ).

■ All three factors are present in McQuillion's claims for damages against members of the Board. The 1996 complaint sought compensatory and punitive damages from individual members of the Board for unconstitutionally rescinding McQuillion's parole date, and the present complaint seeks the same damages for the same conduct by some of the same defendants. The issue was fully and finally litigated when McQuillion's initial damages claim was dismissed due to absolute immunity, and he had the opportunity to appeal. Contrary to McQuillion's argument here, his earlier damages claim was thus not dismissed without prejudice on *Heck* grounds. It was dismissed because the defendants enjoyed absolute immunity. Therefore, the earlier dismissal of the damages claim was a final determination on a ground not altered by McQuillion's subsequent receipt of habeas relief. Finally, the district court's determination of the issue was necessary to its judgment.

■■ But collateral estoppel does not apply to the issue of whether McQuillion can seek damages against the remaining defendants. As noted, the dismissal of his initial damages claim settled the issue of whether absolute immunity shielded members of the Board from money damages. Because not all defendants in the present action are members of the Board, and therefore not entitled to absolute immunity, the issue of whether McQuillion may pursue money damages against the remaining defendants is not foreclosed by the earlier ruling. Still, because we may affirm on any ground supported by the record, *see Serrano v. Francis,* 345 F.3d 1071, 1076–77 (9th Cir.2003), we next consider whether *Heck* bars his claims.

## IV.

All plaintiffs, including McQuillion, assert that the damages they seek are not compensation for past injury. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500, 93 S.Ct. 1827. *Preiser* did not extend its holding to a claim for damages, saying that a plaintiff seeking damages is not attacking the fact or length of his confinement. *Id.* at 494, 93 S.Ct. 1827. In *Heck*, however, the Court squarely addressed the issue:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87, 114 S.Ct. 2364 (footnote omitted).

Following *Heck*, the Court addressed whether a § 1983 claim could proceed where the plaintiff sought damages for being denied good-time credits without due process, as opposed to seeking damages for being denied the credits undeservedly. *Edwards v. Balisok*, 520 U.S. 641, 645, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). There, the Court explained that *Heck* can limit § 1983 claims seeking damages for using the wrong procedure, not only for reaching the wrong result. *Id.* at 646, 117 S.Ct. 1584. The Court concluded that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648, 117 S.Ct. 1584.

Here, plaintiffs state in their complaint that, in violation of §§ 1983, 1985 and 1986, the Governor and his codefendants "willfully and intentionally conspired to inaugurate an illegal 'underground' policy ... to block paroles in perpetuity of term-to-life prisoners such as plaintiffs." As in *Balisok*, plaintiffs' damages claims rely on "deceit and bias" on the part of the decisionmakers, and imply the invalidity of their confinement insofar as their prolonged incarcerations are due to the purported bias of state officials. *See Balisok*, 520 U.S. at 649, 117 S.Ct. 1584 (Ginsburg, J., concurring) ("I agree that Balisok's claim is not cognizable ... to the extent that it is 'based on allegations of deceit and bias on the part of the decisionmaker,' ... [and] 'necessarily impl[ies] the invalidity of the punishment imposed.' ").[4] The disclaimer in the complaint that they do not seek relief that implicates the continuing validity of their confinement does not bring their claims

---

[4]. We agree with our sister circuits that *Heck* applies equally to claims brought under §§ 1983, 1985 and 1986. *See Lanier v. Bryant*, 332 F.3d 999, 1005–06 (6th Cir.2003) (applying *Heck* to § 1985 action); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir.1999) ("*Heck* therefore applies with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986 claims.").

outside the reach of *Heck. See Butterfield v. Bail,* 120 F.3d 1023, 1025 (9th Cir.1997) ("[A]lthough Appellant does not in form challenge the legality or length of his confinement, in substance his damages may only be measured by that confinement.").

 McQuillion, individually, argues that *Heck* has no application because he overturned the rescission of his parole while this appeal was pending. In *Balisok,* the Court made a point of addressing the district court's decision not to grant a motion to dismiss, but to stay the § 1983 action until the state remedies had been exhausted. 520 U.S. at 649, 117 S.Ct. 1584. The Court stated that " § 1983 contains no judicially imposed exhaustion requirement; absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id.* (citation omitted). McQuillion's damages claims were not cognizable at the time of the district court's ruling, which came after our 2002 opinion granting habeas relief, and, therefore, should have been dismissed.

In short, McQuillion's claims for money damages against members of the Board are barred by collateral estoppel, and his claims against the remaining defendants are barred by *Heck.* The co-plaintiffs' claims for money damages are also barred by *Heck.*

## V.

Co-plaintiffs also seek prospective relief, arguing that it would afford them only the possibility of a constitutionally adequate parole hearing in the future, without implying the invalidity of their sentences. They explain that they must resort to prospective relief, because individual state habeas petitions cannot affect the Board's and Governor's overall administration of parole. Accordingly, they state: "The is-sue for consideration by this Court is whether the federal courts can grant injunctive relief that will benefit more than just individual inmates, by compelling the Board and Governor to abide by the law, specifically, the mandate that in *California Penal Code* § 3041 that parole shall 'normally' be granted." Appellants' Supp. Opening Brief at 47.

 The Court in *Balisok* stated that "[o]rdinarily, a prayer for ... prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may be brought under § 1983." 520 U.S. at 648, 117 S.Ct. 1584. Citing *Lewis v. Casey,* 518 U.S. 343, 351–54, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), and *O'Shea v. Littleton,* 414 U.S. 488, 499, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Court cautioned, however, that a plaintiff still must show standing and meet the requirements for injunctive relief. *Id.* To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

 Here, co-plaintiffs seek to enjoin defendants from violating state law and the California Constitution. However, assuming that co-plaintiffs have a protected liberty interest in parole eligibility matters, the prospective relief they seek is unattainable in § 1983 proceedings, illustrating why their remedy lies in federal habeas proceedings. Bias on the part of the Governor, the Board and the Attorney General cannot be redressed by an injunction ordering those state officials to comply with state law. *See Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The effect of a purportedly biased decision resulting in a constitutional violation could

be considered by a federal court if contested in a properly exhausted habeas petition. *See, e.g., McQuillion I*, 306 F.3d at 912. Moreover, as the district court ruled, co-plaintiffs have alleged nothing that would indicate the challenged state statutes are facially unconstitutional because the Governor has a role in parole determinations or for any other reason. *Cf. Johnson v. Gomez*, 92 F.3d 964 (9th Cir.1996) (ruling governor's role in parole statutes did not constitute ex post facto violation).

■ Their remaining claims for prospective relief also cannot proceed. Section 1983 does not vest federal courts with the authority to enjoin the administration of, or to declare invalid, state laws on the grounds that they are incompatible with other state laws, much less to rule that state laws are contrary to the state legislature's intent. Nor can we put in place prophylactic rules of our own making where the underlying state laws are not themselves contrary to federal law. That is the job of the state courts and state legislatures.

We note that plaintiffs are incorrect in asserting that they have no other remedy available. In addition to federal habeas proceedings, through which McQuillion obtained his outright release, the California state courts provide a means of collaterally attacking an unfounded rescission or denial of parole by the Board or the Governor. *See In re Rosenkrantz*, 29 Cal.4th 616, 658, 667, 128 Cal.Rptr.2d 104, 59 P.3d 174 (2002) (courts can review decisions of the Board and the Governor); *In re Smith*, 109 Cal.App.4th 489, 507, 134 Cal.Rptr.2d 781 (2003) ("[T]he Governor's decision is not supported by 'some evidence.'"); *In re Capistran*, 107 Cal.App.4th 1299, 1306, 132 Cal.Rptr.2d 872 (2003) (affirming grant of habeas petition where Governor's decision not supported by "some evidence").

## VI.

■ Plaintiffs also appeal the denial of leave to amend the complaint. "Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to pro se plaintiffs." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir.2003) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130, 1131 (9th Cir.2000) (en banc)). The district court did not err in denying leave to amend because amendment would have been futile. At the time of its ruling, McQuillion could not amend his complaint to avoid collateral estoppel, all plaintiffs could not state cognizable damages claims consistent with *Heck*, and co-plaintiffs could allege no facts entitling them to prospective relief.

## VII.

McQuillion's claims for declaratory and injunctive relief are dismissed as moot, and collateral estoppel bars his claim for damages against members of the Board. *Heck* bars all plaintiffs' claims for damages, and co-plaintiffs do not have standing to seek prospective relief in this case.

**AFFIRMED.**