**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARC A. BURNETT,
          *Petitioner-Appellant,*

v.

ROBERT O. LAMPERT; OREGON
BOARD OF PAROLE AND POST PRISON
SUPERVISION,
          *Respondents-Appellees.*

No. 04-35305

D.C. No.
CV-02-00673-REJ

OPINION

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Argued and Submitted
September 13, 2005—Portland, Oregon

Filed December 27, 2005

Before: Raymond C. Fisher, Ronald M. Gould and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

C. Renée Manes, Assistant Federal Public Defender, District of Oregon, Portland, Oregon, for the petitioner-appellant.

Carolyn Alexander, Assistant Attorney General, Portland, Oregon, for the respondent-appellee.

**OPINION**

FISHER, Circuit Judge:

The Oregon Board of Parole and Post-Prison Supervision ("Board") twice deferred Marc Alan Burnett's scheduled parole release date. Burnett argues that the Board's deferrals were unconstitutional and directly resulted in his suffering three years and eight months of unlawful imprisonment.

Burnett challenged the deferrals directly in state court and then with a habeas corpus petition in federal district court. While his federal habeas petition was pending, he was released on parole. Before the district court considered his petition, however, Burnett violated the conditions of his parole and he was reimprisoned, leading the district court to dismiss his habeas petition as moot. Burnett argues that his

substantive constitutional claims are not moot because the court can reduce his current prison term (resulting from his parole violation) by the three years and eight months of allegedly illegal detention. Burnett does not challenge his original sentence or his reimprisonment following his parole violation, however. We review the district court's decision to deny Burnett's habeas petition de novo, *see Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004) (per curiam) (as amended), and conclude that we cannot grant him habeas relief even if he were able to prove that his scheduled parole release dates were unconstitutionally deferred. We therefore affirm the district court's dismissal of Burnett's habeas petition as moot.

## I. Background

In December 1987, Burnett was convicted of two counts of rape in the first degree and one count of robbery in the first degree by an Oregon state court. In January 1988, he was sentenced to a total of 40 years in prison, with a 20 year minimum under Oregon's indeterminate "matrix" sentencing system.[1] In February 1989, the Board set an initial parole release date of August 27, 1998, thereby reducing Burnett's period of imprisonment below his minimum sentence of 20 years to 130 months. Over time, the Board made several fur-

---

[1]The Oregon Court of Appeals provided the following illustration of the extent of the Board's discretion in determining the length of time an inmate actually spends behind bars under the indeterminate "matrix" sentencing system:

> [T]he parole system allows the Board to release an inmate who has not finished serving his or her indeterminate prison sentence, and that person may be kept on parole until the sentence expires. Thus, a person serving a 10-year indeterminate sentence who was paroled after five years could be kept on parole for another five years, whereas a person serving a 10-year indeterminate sentence who was paroled after seven years could be kept on parole only for another three years. In short, there is no direct correlation between when one is paroled and when one's parole terminates.

*Barnes v. Thompson*, 977 P.2d 431, 432 (Or. App. 1999).

ther adjustments to his parole release date (none of which Burnett challenges) such that as of January 17, 1996, Burnett was scheduled to be paroled on January 28, 1999.

At the Board's request, a licensed psychologist evaluated Burnett and submitted a report to the Board in April 1998. At a hearing in June 1998, the Board considered the psychological evaluation as well as unspecified other information and found that Burnett suffered from "a present severe emotional disturbance such as to constitute a danger to the health and safety of the community." The Board extended Burnett's parole release date by 24 months — to January 28, 2001 — based on that finding. Burnett's administrative review petition challenging that deferral was denied in December 1998. In June 1999, Burnett filed a state habeas petition, which was denied in September 1999. The Oregon Court of Appeals affirmed, *see Burnett v. Lampert*, 25 P.3d 337 (Or. App. 2001), and the Oregon Supreme Court denied further review.

Another psychologist examined Burnett in December 1999 in preparation for a March 2000 Board hearing. At that hearing, the Board again "conclude[d] that [Burnett] suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community" and extended his parole release date by another 24 months — to September 28, 2002.[2] In May 2000, Burnett's administrative review petition challenging the Board's March 2000 deferral was unsuccessful. An Oregon circuit court agreed with Burnett, however, and granted his state habeas petition in December 2000, finding that "the Board didn't have a sufficient basis for not granting [Burnett] parole," and ordered him paroled within 60 days

---

[2]In April 1999, after the Board's first 24-month parole date deferral but before the second deferral, the Board granted Burnett a 4-month good behavior credit, thereby accelerating his release date from January 28, 2001 to September 28, 2000. The Board calculated the second 24-month parole date deferral based on the September 28, 2000 release date it had set in April 1999.

unless the Board filed an appeal. Burnett was not released within the 60-day period because the Board initially appealed the state court's decision. The Board later dropped its appeal, but the Board did not then comply with the release order for reasons that are not clear from the record.

Eventually, Burnett was released on parole on September 28, 2002, subject to a number of conditions and under "active" supervision for a minimum period of 36 months.[3] *See* Or. Admin. R. 255-094-0000(2)(h) (2005). In March 2003, Burnett was arrested for violating the conditions of his parole. The Board revoked his parole, and in July 2003 reset his release date to October 5, 2013, thereby imposing a 127-month term of imprisonment. Burnett initially appealed his revocation to the Oregon Court of Appeals, but withdrew his appeal in February 2005.

Previously — in May 2002, *before* he was paroled — Burnett had filed his petition for federal habeas corpus relief,

---

[3]Oregon defines "active" supervision as "[s]upervision requiring the supervising officer's regular contact and monitoring to assure continued compliance with the general and special conditions of parole or post-prison supervision." Or. Admin. R. 255-005-0005(3) (2005). In contrast, under "inactive" supervision,

> [t]he offender remains under supervision however;
>
> (a)   There is no direct supervision by a supervising officer and no requirement of regular reporting;
>
> (b)   There are no additional supervision fees; and
>
> (c)   The offender remains subject to arrest by a supervising officer for violation of conditions of supervision and return to active supervision at any time until expiration of the sentence or post-prison supervision term . . . .

Or. Admin. R. 255-005-0005(21) (2005). After the mandatory initial 36-month period of active supervision, Burnett's transfer to inactive supervision status is entirely at the Board's discretion. *See Odle v. Thompson*, 26 P.3d 177, 178 (Or. App. 2001) ("even if plaintiff should have been released in April 1997, he is nonetheless not *entitled*, at any stage of parole, to be placed on inactive supervision") (emphasis in original).

alleging that the Board's deferrals of his release date based on psychological evaluations violated the Due Process Clause of the Fourteenth Amendment and the ex post facto clause of the Oregon Constitution. *See* Or. Const. art. I, § 21. The district court considered Burnett's habeas petition in February 2004 — *after* his parole had been revoked — and dismissed it as moot. Burnett filed a timely notice of appeal with this court. We have jurisdiction under 28 U.S.C. § 2253(a), and affirm the district court's dismissal.

## II.   Discussion: Mootness

**[1]** Article III, Section 2 of the United States Constitution establishes the scope of federal court jurisdiction, which includes "all Cases . . . arising under this Constitution . . . [and] Controversies to which the United States shall be a Party . . . ." The Supreme Court has concluded that "[t]he Constitution's case-or-controversy limitation on federal judicial authority . . . underpins . . . our mootness jurisprudence . . . ." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Mootness is jurisdictional. *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

**[2]** Burnett argues that his actual injury traceable to the State of Oregon is the Board's allegedly unconstitutional deferral of his parole release date by three years and eight months. Because of the specific circumstances of this case — namely Burnett's release on parole and his subsequent reimprisonment for a parole violation — our ability to redress Burnett's alleged injury with a favorable judicial decision is limited by the nature of habeas corpus relief. Our analysis is specifically limited to the sort of equitable relief we may grant

in response to a habeas petition, the only type of relief Burnett seeks. We do not decide whether Burnett has *other* remedies for the three-year, eight-month period of allegedly illegal imprisonment.[4]

[3] "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Federal courts have a fair amount of flexibility in fashioning specific habeas relief. "A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require and is not required to order petitioner's immediate release from physical custody." *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (internal quotation marks and citations omitted).

[4] Burnett urges us to use our equitable power to fashion habeas relief to accelerate his current projected release date of October 5, 2013 by three years and eight months — the length of time he claims he was held in illegal custody. But Burnett does not allege he is *currently* being held in illegal custody. Indeed, he challenges neither the legality of his original conviction and sentence nor the legality of his reimprisonment after Oregon authorities judged him to be in violation of his

---

[4]*See, e.g.*, 42 U.S.C. § 1983 (monetary damages). *See also Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("[I]f the district court determines that the plaintiff's [§ 1983] action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . .") (emphasis in original); *Nonnette v. Small*, 316 F.3d 872, 876 (9th Cir. 2002) ("[T]he unavailability of a remedy in habeas corpus because of mootness [does] permit [an inmate] to maintain a § 1983 action for damages, even though success in that action would imply the invalidity of the disciplinary proceeding that caused revocation of his good-time credits.") (interpreting *Heck v. Humphrey*).

parole conditions. Burnett also does not allege that he suffers from any collateral consequences as a result of the deferral of his parole release date. *See Spencer*, 523 U.S. at 7.

Although both the three-year, eight-month period of incarceration Burnett is challenging and his current 127-month period of incarceration following his parole violation ultimately stem from the same conviction for rape and robbery, the two periods of time are not fungible. The immediate reason Burnett finds himself in Oregon state custody is not because his parole release date was delayed, but because he violated the terms of his parole after he *was* released.

**[5]** Burnett urges us to follow *McQuillion v. Duncan*, 342 F.3d 1012 (9th Cir. 2003) ("*McQuillion II*"), and advance his currently scheduled parole release date by three years and eight months, thereby remedying his alleged injury-in-fact. But *McQuillion II*'s logic does not apply here because McQuillion had not been released on parole when this court considered his habeas petition, whereas Burnett has been released *and* reimprisoned for a parole violation. We would have been essentially *lengthening* McQuillion's sentence if we had ruled that he was required to serve a term of parole after his release from prison. By the time the *McQuillion II* court heard the case, McQuillion had already served more time in prison than his lawful period of imprisonment and parole combined. *Id.* at 1015.[5] In contrast, although Burnett

---

[5]In *McQuillion II*, the warden of the California prison where McQuillion was being held challenged a previous decision of this court granting McQuillion's habeas petition and ordering his release from custody. *See id.* at 1015. *See also McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 2002) ("*McQuillion I*"). The warden argued that "McQuillion should not be released immediately without an accompanying three-year period of parole." *McQuillion II*, 342 F.3d at 1015. This court responded "that if McQuillion had been released on the date to which he was entitled, he would have been released in May 1994. The three-year parole, which he would have been required to serve if he had been released on time, has long since expired." *Id.* Although *McQuillion II* did not acknowledge that the three-year mandatory period of parole was only a minimum and could

has not yet served the entirety of his sentence, he is asking us to *shorten* the length of time he is to spend in prison. For us to accelerate Burnett's current parole release date by three years and eight months as he suggests, we would necessarily have to question either the validity of his original sentence (or a portion of it) or his reimprisonment following his parole violation — two issues that are not before us.[6]

### III.   Conclusion

[6] The "actual injury traceable to the [State of Oregon]" for which Burnett seeks relief cannot be "redressed by a favorable . . . decision" of the court issuing a writ of habeas corpus. *Spencer*, 523 U.S. at 7. We hold that Burnett's release on parole and subsequent reimprisonment render his habeas corpus petition moot. We do not reach the merits of his petition.[7]

### AFFIRMED.

---

have been extended, *see* Cal. Code Regs. tit. 15, § 2515(a) (2005), the maximum period of parole for someone in McQuillion's position was only four years, *see id.* § 2515(e). This period, too, "ha[d] long since expired." Therefore, if McQuillion's parole date had not been improperly deferred, he would have served out his three- to four-year parole and then been a free man by the time this court heard the warden's appeal.

[6]Burnett contends that *Brown v. Palmateer*, 379 F.3d 1089 (9th Cir. 2004), is a case "factually indistinguishable" from his own. That is incorrect. Brown, like Burnett, was imprisoned in Oregon and, also similar to Burnett, alleged that "the method by which the Board decided whether to postpone a prisoner's parole date" based on an evaluation of his mental health violated the Ex Post Facto Clause. *Id.* at 1091. However, at the time the court was considering Brown's federal habeas petition, Brown had not yet been released on parole but remained imprisoned as a direct result of "the Board['s] retroactive[ ] appli[cation of] a version of a parole statute enacted after [Brown perpetrated his] crimes . . . ." *Id.* at 1096.

[7]Because we deny Burnett's habeas petition as moot, we also deny as moot Burnett's motion, filed on July 14, 2004, to expand the record to include additional documents from his successful state habeas petition. However, even if we were to take judicial notice of those documents as part of an expanded record, they would not alter our conclusion.