**David Keith SNOW, Petitioner–Appellant,**

v.

**Jean HILL, Superintendent, Respondent–Appellee.**

No. 04–35708.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 2006.*

Filed Oct. 10, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See*

Fed. R.App. P. 34(a)(2).

Anthony David Bornstein, Esq., Federal Public Defender's Office, Portland, OR, for Petitioner–Appellant.

Carolyn Alexander, Esq., Office of the Oregon Attorney General, Salem, OR, for Respondent–Appellee.

Before: HAWKINS, SILVERMAN, and GOULD, Circuit Judges.

## MEMORANDUM **

Respondent Jean Hill contends that mootness bars review of Petitioner David Snow's appeal of the district court's ruling that the state court record contains "some evidence" to support the Oregon Parole Board's ("the Board") decision to defer parole. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

After being convicted of First Degree Sex Abuse and Use of a Child in a Display of Sexually Explicit Conduct, Snow received a suspended sentence. When Snow failed to attend treatment sessions, his probation was revoked and a twenty-year term was imposed. The Board deferred Snow's release date for twenty-four months on September 30, 1999, relying on an evaluation by Dr. David Starr that indicated Snow had aggressive tendencies, was in denial of his variant sexual proclivities, and had failed treatment, together raising concerns of recidivism.

After exhausting state remedies, Snow on October 31, 2003 filed a petition for habeas corpus in the United States District Court for the District of Oregon, alleging a denial of due process on the theory that the Board lacked sufficient evidence to find that Snow suffered from a present severe emotional disturbance. The district court held that Dr. Starr's report was "some evidence" in support of deferral under *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). While this appeal was pending, Snow was released on active parole supervision on February 10, 2006.

An appeal is moot unless petitioner suffered or is threatened with "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (citation and internal quotation marks omitted). Upon release, a justiciable controversy may still exist if petitioner "suffers from any collateral consequences as a result of the deferral" that may be redressed by habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 1000 (9th Cir.2005) (citing *Spencer*, 523 U.S. at 7, 118 S.Ct. 978).

First, Snow argues, in reliance on *McQuillion v. Duncan*, 342 F.3d 1012 (9th Cir.2003) ("*McQuillion II* "),[1] that his appeal is not moot because we can fashion a remedy by deducting time from his maximum parole period. *McQuillion* is inapposite. In *McQuillion II*, we relieved the petitioner of a fixed three-year parole, ordinarily required upon release under California law, because the unconstitutional rescission resulted in petitioner serving more

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. In *McQuillion,* we held that rescission of parole violated due process under *Hill* where

the California Parole Board provided no evidentiary support under the statutory factors for determining "good cause" for rescission. *See McQuillion v. Duncan*, 306 F.3d 895, 906–11 (9th Cir.2002) ("*McQuillion I* ").

than nine years in prison beyond his proper release date where the appropriate parole period would have already expired. *McQuillion*, 342 F.3d at 1015. Yet here Snow's imprisonment did not extend beyond his maximum parole period, which, under Oregon's indeterminate system, expires in 2017 in conjunction with the sentence duration irrespective of his release date. *See Barnes v. Thompson*, 159 Or. App. 383, 977 P.2d 431, 432 (1999) ("[T]here is no direct correlation between when one is paroled and when one's parole terminates."). By contrast, in *McQuillion*, the release date *was* the triggering event for the three-year parole period, which we equitably cancelled because that fixed period would have expired had the petitioner been properly and earlier released. If the Board had released Snow in 1999, he still would have been subject to parole conditions until 2017. Because underlying conviction determines maximum parole duration in Oregon, accelerated expiration of parole is not an available remedy.

Second, Snow argues that his active supervision status is a collateral consequence of the Board's 1999 deferral. As a remedy, Snow seeks a remand to the district court to determine whether he can transfer to inactive supervision. To avoid mootness, Petitioner must demonstrate the possibility that a decision here could impact a lower court's proceedings. *See Mujahid v. Daniels*, 413 F.3d 991, 995 (9th Cir.2005) (holding case not moot where sentencing court could potentially reduce term of supervised release). Snow has made no such showing here. The Board has the sole discretion to determine whether Snow may transfer to inactive status after his February 10, 2006 release. *See Barnes*, 977 P.2d

at 433 (stating it is inappropriate for state appellate court to order inactive supervision "because that is clearly a decision . . . left to the discretion of the Board, based on how the parolee has done on active supervision"). The state circuit court determined on December 5, 1997 that Snow did not substantially comply with the terms of his probation,[2] which warrants release on active supervision. *See* Or.Rev. Stat. § 144.085(4) ("[T]he board may extend the active supervision period or return the offender to active supervision status . . . if it finds the offender has not substantially fulfilled the supervision conditions. . . ."). In 1999, the Board did not consider the issue of substantial compliance, but rather deferred Snow's release based on Dr. Starr's report. Even if we were to conclude that the Board violated due process by offending the *Hill* standard, that decision would have no bearing on the Board's prior consideration of substantial compliance. Also, to the extent that Snow contends that remand is necessary to determine whether he might have been able to transfer to inactive supervision if he had been released in 1999, the argument is speculative. The district court does not have the authority to determine, in advance of the Board, whether Snow would have substantially complied with the terms of his release if it had occurred in 1999, and the district court had no non-speculative basis to make such a determination.

Accordingly, we conclude that Snow's appeal is moot.

**APPEAL DISMISSED.**

---

**2.** We cannot question the circuit court's determination of substantial noncompliance because it is not before this Court. *See Burnett*, 432 F.3d at 1000 (remedy unavailable because the court would "necessarily have to question . . . the validity of his original sentence (or a portion of it)").