[No. A119085. First Dist., Div. Five. Mar. 25, 2008.]

In re RONNIE GENE BUSH on Habeas Corpus.

COUNSEL

Picone & Defilippis and Steve M. Defilippis for Petitioner Ronnie Gene Bush.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca and Amber N. Wipfler, Deputy Attorneys General, for Respondent State of California.

OPINION

NEEDHAM, J.—When the Board of Parole Hearings (Board)[1] determines that a prisoner serving an indeterminate life sentence is suitable for parole, it must calculate a base term for the offense and set a parole release date. (Cal. Code Regs., tit. 15, §§ 2282, 2289, 2290.) In some cases, the time already served by the prisoner exceeds this base term. We conclude that although such a prisoner is entitled to immediate release, he or she is not entitled to have that additional time credited against the parole period. We deny the writ of habeas corpus sought by petitioner Ronnie Gene Bush, concluding that he is not entitled to the relief requested, namely, that he be discharged from his five-year parole period based on time he served in prison in excess of the base term.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Bush was convicted in 1985 of conspiracy to commit kidnapping for ransom (Pen. Code, §§ 182, 209)[2] and attempted kidnapping for ransom (§§ 664, 209). The Marin County Superior Court sentenced him to an indeterminate life term for the conspiracy count, with a stayed nine-year term for the attempted kidnapping, plus a one-year term for a weapon enhancement. Bush's life term commenced on October 4, 1985, and his minimum parole release date was September 5, 1992.

Bush was found unsuitable for parole in hearings held between 1991 and 2003 before the Board. Between 1999 and 2003, he challenged the evidentiary basis for his parole denials by petitions for writ of habeas corpus, and

---

[1] The proceedings relevant to this case took place before the Board of Prison Terms, which was abolished and replaced by the Board of Parole Hearings effective July 1, 2005. (Pen. Code, § 5075, subd. (a).) We use the term "Board" to refer to both entities, since they perform the same duties.

[2] Further statutory references are to the Penal Code unless otherwise indicated.

although he had some success at the trial court level, he did not ultimately prevail. Bush was eventually found suitable for parole following a hearing on July 27, 2004. After adjusting for credits, the Board set the base term for Bush's offense at 12 years six months (150 months). This decision was final as of November 15, 2004, at which time Bush had custody credits exceeding 20 years.

The Governor's Office pursued a request for an en banc review of the suitability determination. (Pen. Code, § 3041.1.) Bush petitioned the superior court for a writ of habeas corpus, arguing that the Governor's request for review could not be granted because it was not timely. The superior court agreed and granted the petition. Bush was released from prison on March 19, 2005, subject to a five-year parole period.[3]

Bush then filed a petition for writ of habeas corpus with this court seeking his discharge from parole. He reasoned that he had over 20 years in custody credits against a base term of only 12 years six months, thus entitling him to a credit of the excess time against his parole period.

Because the issue had not yet been squarely presented in the superior court, we denied the petition without prejudice to Bush's seeking relief below. Bush filed a petition for writ of habeas corpus in the Marin County Superior Court raising the same issue. In a thoughtful and well-reasoned statement of decision, the Honorable Paul Haakenson denied the petition as it was written, rejecting the argument that a life prisoner is entitled to credit against his or her parole period for custody time exceeding the base term set by the Board. Judge Haakenson granted the petition to the extent it sought credits against the parole period for the time Bush spent in prison custody from November 16, 2004, the date the parole suitability determination became final, through March 19, 2005, his actual release date on parole.

Bush filed the instant petition for writ of habeas corpus, raising the same arguments concerning his entitlement to credits against his parole period. We issued an order to show cause and now turn to the merits of his claims.

## II. DISCUSSION

### A. *Custody Credits in Excess of a Life Prisoner's Base Term Are Not Applied to Reduce the Parole Period*

Bush argues that he is entitled to immediate release from parole because his time in prison custody exceeded the 12-year six-month base term set by

---

[3] Section 3000, subdivision (b)(2) provides: "In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed five years in the case of an inmate imprisoned for any offense other than first or second degree murder for which the inmate has received a life sentence . . . ."

the Board by more than the five-year parole period. Bush equates his base term with a fixed term sentence under the determinate sentencing law (DSL), noting that prisoners whose time in custody exceeds their determinate terms are entitled to have the time applied to their parole period. We conclude the analogy is flawed.

Because the essential facts of this case are undisputed, and the question before us is primarily one of law, our standard of review is de novo. (*People v. Jones* (2007) 157 Cal.App.4th 1373, 1380, fn. 5 [69 Cal.Rptr.3d 262].) Additionally, because the court below did not conduct an evidentiary hearing, but reached its decision based on documentary evidence attached to the petition for writ of habeas corpus and return, we independently review the record. (*In re Lowe* (2005) 130 Cal.App.4th 1405, 1420 [31 Cal.Rptr.3d 1].)

■ Since the enactment of the DSL in 1976, most felonies are subject to one of three fixed terms selected by the court at the time of sentencing. The defendant must serve this entire term, less applicable credits, but must then be released on supervised parole for a set period of time. (§ 3000, subds. (a)(1), (b)(1); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078 [23 Cal.Rptr.3d 417, 104 P.3d 783] (*Dannenberg*).) Describing this requirement as "a mandatory 'kick-out'" provision, our Supreme Court has stated that the Board "has no discretion to grant or withhold parole to a prisoner who has served a determinate term." (*People v. Burgener* (1986) 41 Cal.3d 505, 529, fn. 12 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 756 [80 Cal.Rptr.2d 734, 968 P.2d 445].) Any time in custody beyond the parole release date is thus unlawful.

The DSL contemplates that in some cases, a defendant's presentence credits will exceed the fixed term sentence and entitle him or her to credit against some or all of the parole period. Section 1170, subdivision (a)(3) provides, "In any case in which the amount of preimprisonment credit under Section 2900.5 or any other provision of law is equal to or exceeds any sentence imposed pursuant to this chapter, the entire sentence shall be deemed to have been served and the defendant shall not be actually delivered to the custody of the secretary [of the Department of Corrections and Rehabilitation]. The court shall advise the defendant that he or she shall serve a period of parole and order the defendant to report to the parole office closest to the defendant's last legal residence, unless the in-custody credits equal the total sentence, including both confinement time and the period of

parole." Additionally, case law recognizes that time served in excess of the determinate term must be credited against the prisoner's parole period. (See, e.g., *In re Carter* (1988) 199 Cal.App.3d 271, 273 [244 Cal.Rptr. 648]; *People v. Lara* (1988) 206 Cal.App.3d 1297, 1301–1303 [254 Cal.Rptr. 360].)

■ Some serious crimes, including noncapital murders and certain kidnapping offenses, remain subject to indeterminate life sentences. Such prisoners may serve up to life in prison, but become eligible for parole after serving a minimum term of confinement. (*Dannenberg, supra,* 34 Cal.4th at p. 1078.) Bush falls within this category of prisoners, having received an indeterminate life term for his conviction of conspiracy to commit kidnapping for ransom, under which he was eligible for parole after serving a minimum term of seven calendar years. (§§ 209, subd. (a), 182, subd. (a), 3046, subd. (a)(1).)

The release dates of prisoners serving indeterminate life terms are set by the Board rather than the trial court. One year before the life prisoner's minimum confinement period expires, a Board panel shall meet with the prisoner to evaluate his or her suitability for parole and "shall normally set a parole release date." (§ 3041, subd. (a).) A prisoner will be found unsuitable for parole, and no release date will be set, if the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual . . . ." (§ 3041, subd. (b).) When a life prisoner is found suitable for parole, the Board sets a release date by calculating a "base term" for the offense, adjusted by any credits to which the prisoner is entitled. (Cal. Code Regs., tit. 15, §§ 2282, 2289, 2290.)

■ The Board's decision that a prisoner is suitable for release precedes and is distinct from its choice of a base term fixing an actual release date. (*Dannenberg, supra,* 34 Cal.4th at p. 1080; *In re Elkins* (2006) 144 Cal.App.4th 475, 499 [50 Cal.Rptr.3d 503].) The California Code of Regulations details the criteria for finding a prisoner suitable or unsuitable for parole, many of which concern the circumstances of the offense. (Cal. Code Regs., tit. 15, § 2281, subds. (c), (d); see also Cal. Code Regs., tit. 15, § 2402 [criteria for murder and attempted murder convictions].) But the Board is not limited to looking at the facts of the offense; it must also consider all relevant and reliable information affecting the prisoner's suitability, including criminal history, social history, past and present mental state, age and behavior while incarcerated. (Cal. Code Regs., tit. 15, §§ 2402, 2281, subds. (b)–(d).)

It is only when the prisoner has been found suitable for parole based on these criteria that the Board proceeds to select the base term using a matrix of factual variables "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." (§ 3041, subd. (a).) Unlike the suitability determination, "The base term shall be established solely on the gravity of the base offense, taking into account all of the circumstances of that crime." (Cal. Code Regs., tit. 15, § 2282, subd. (a).)

Because the suitability determination focuses on the prisoner's danger to the public, while the base term reflects an appropriate sentence for the crime when compared to other comparable offenses, the date of the suitability determination may be earlier or later than the release date that is calculated using the base term. In some cases, the prisoner will be found suitable before he or she has spent time in custody equal to the length of the base term, and must remain in prison custody. In other cases, the time actually served by the prisoner will exceed the base term set by the Board, and the prisoner will be entitled to be released. The instant case illustrates the latter situation. Under the matrix used by the Board to select a uniform term based solely on the circumstances of Bush's offense, the appropriate base term sentence is 12 years six months. Yet Bush was found unsuitable for parole for a much longer period because an earlier release date would have posed an unreasonable danger to society. His custody during the period between his theoretical release date as calculated using the base term and the time he was finally found suitable for parole was entirely lawful; indeed, the Board could not have legally released him absent a determination that he was suitable for parole.

■ The question presented by this case is whether a life prisoner such as Bush is entitled to have his or her parole period reduced by time spent in custody in excess of the base term ultimately set by the Board. Bush cites no statute or regulation directly authorizing such a credit. The California Code of Regulations provides that a prisoner who has served more time in custody than the base term is entitled to immediate release, but it makes no mention of a reduction or elimination of the parole period: "If the time already served by the prisoner exceeds the term set pursuant to this article, the panel's order shall read 'Prisoner to be released upon time already served,' and the prisoner shall be released in accordance with Article 9 of this chapter [setting forth procedures for releasing a prisoner on parole]." (Cal. Code Regs., tit. 15, § 2289.)

We reject Bush's claim that prison custody in excess of the base term must be credited to the parole period under California Code of Regulations, title 15,

section 2345, which provides, "If any custody credit remains after deducting it from the offense to which it applies, the remaining credit shall be deducted from the parole period." This provision appears in article 8 of title 15, entitled, "Preprison Credit," and does not apply to credits for time spent in prison. Rather, section 2345 recognizes that in some cases (most often those involving shorter determinate sentences) the amount of time spent in custody prior to the imposition of a prison sentence will exceed the sentence imposed by the court, in which case the defendant would not have to serve any prison time and would, additionally, be entitled to have those credits applied to his parole period. In the case of a prisoner serving an indeterminate life sentence, however, the preprison credits described in article 8 are instead taken into account when the Board sets the base term, as such credits are applied to the base term itself to reduce its length. (Cal. Code Regs., tit. 15, § 2289.)

Bush argues that credits against the parole period are required by section 2900, subdivision (c), which states, "Except as provided in this section, all time served in an institution designated by the Director of Corrections shall be credited as service of the term of imprisonment." (See also § 2900.5, subd. (a).) He notes that under section 2900.5, subdivision (c), " 'term of imprisonment' includes . . . any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency." Bush reasons, in effect, that the base term set by the Board plus the five-year parole period was the "term of imprisonment" against which he was entitled to credit, and that because his time in custody exceeded this term, he was entitled to be released from prison *and* discharged from parole.

We are not persuaded. The "term of imprisonment" under section 2900.5 is not limited to the base term ultimately set by the Board, but includes "*any* period of imprisonment prior to release on parole . . . ." (§ 2900.5, subd. (c), italics added.) We construe section 2900.5, subdivision (c) to mean "any period of imprisonment *lawfully served*." Thus, the "term of imprisonment" includes the time a life prisoner lawfully spends in prison custody awaiting a determination of suitability for parole, a construction of the statute that is consistent with the statutory scheme and promotes public policy. Bush received credits for all the time he lawfully spent in prison custody pending the suitability determination in his case, and he is entitled to no further reduction of his parole period.[4]

---

[4] As previously noted, the superior court ordered that Bush receive credits against his parole period for time spent in prison custody after November 16, 2004, the last date he could have lawfully been held. The Attorney General has not challenged that decision.

Nor do we agree that the credit Bush seeks is required by section 1170, subdivision (a)(3), under which a prisoner serving a *determinate* term will not be placed on parole if the in-custody credits are equal to the total confinement time and parole period. A determinately sentenced inmate who has served time in prison beyond the maximum period of confinement has been held unlawfully. Bush was not sentenced to a determinate term, but to an indeterminate life sentence. Bush was lawfully confined while serving time in prison awaiting a suitability determination, even though the length of his incarceration was greater than the base term ultimately set by the Board. The state law cases on which Bush relies do not involve prisoners serving an indeterminate life term pending a determination of suitability for parole. (See *In re Randolph* (1989) 215 Cal.App.3d 790, 795 [263 Cal.Rptr. 768]; *In re Reina* (1985) 171 Cal.App.3d 638, 642 [217 Cal.Rptr. 535]; *In re Ballard* (1981) 115 Cal.App.3d 647, 649–650 [171 Cal.Rptr. 459].)

■ We reject Bush's argument that the base term set by the Board is the equivalent of a determinate sentence. Bush's claim rests on a single sentence in *In re Hogan* (1986) 187 Cal.App.3d 819, 824 [232 Cal.Rptr. 90] (*Hogan*): "[I]n setting the release date for an indeterminate sentence, [the Board] performs the same function as does the trial court in ordering a determinate sentence—it fixes a term of definite duration." Although Bush interprets this sentence to mean that an indeterminate sentence becomes a determinate sentence when the base term is set by the Board, it does not stand for this broad proposition. The issue in *Hogan* was whether a prisoner sentenced to a term of 26 years to life was a "life prisoner" within the meaning of an international treaty governing the transfer of inmates. The court held that for purposes of the treaty in question, the inmate would remain a "life prisoner" (who was thus ineligible for transfer) until the Board fixed a date for his release. (*Id.* at pp. 826–827.) Custody credits were not an issue, and it is axiomatic that cases are not authority for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) *Hogan* does not support the argument that Bush now advances.

Bush also relies on *McQuillion v. Duncan* (9th Cir. 2003) 342 F.3d 1012, 1015 (*McQuillion*), in which a California prisoner serving an indeterminate sentence of seven years to life was ordered released and discharged from parole after the court determined that the Board had erroneously rescinded his 1994 parole date and had held him for nine years after the date he was entitled by law to be released from prison. The facts of *McQuillion* are considerably different from those we consider here. In effect, the *McQuillion* court determined that the prisoner was not lawfully in custody during the nine years following his original parole date because the rescission of that date was not supported by "some evidence." (*Id.* at p. 1014.) The prisoner was

therefore entitled to a credit of this unlawful custody time against his three-year parole period. (*Id.* at p. 1015.) Bush, by contrast, was lawfully in custody pending a determination that he could be safely paroled, and he was not entitled to be released until the Board's suitability determination became final on November 16, 2004. Although he was held for several months beyond that date while the Governor's untimely request for en banc review was pending (from Nov. 16, 2004, to Mar. 19, 2005), the superior court has already granted him credit of this excess time against his parole period. Unlike the prisoner in *McQuillion*, Bush is not entitled to additional credits based on unlawful prison custody.

■ The legislative purpose of requiring a parole period is expressly set forth in section 3000, subdivision (a)(1), which provides in relevant part: "The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees . . . and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge." This purpose would be thwarted if the parole periods of life prisoners could be reduced or eliminated by credits for time spent lawfully in prison custody awaiting a determination of parole suitability. As the trial court observed below, the acceptance of Bush's argument would result in a system where "those life prisoners who have been denied release on parole, presumably due to their inability to function lawfully and productively in society, would be the least likely to actually serve a period of parole."

Finally, we observe that a system which deducts from the parole period all lawful custody credits in excess of the base term might ultimately result in the release of fewer life prisoners on parole. When considering parole suitability, the Board must consider all relevant information, including "any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community . . . ." (Cal. Code Regs., tit. 15, § 2281, subd. (b).) If the Board were to determine that a life prisoner would be entitled to unsupervised release due to credits exceeding the base term, it might deem the prisoner unsuitable on this basis, notwithstanding the prisoner's suitability if released subject to parole supervision. It is unlikely the Legislature would have intended this paradoxical result.

B. *Collateral Estoppel Does Not Preclude the Board from Arguing That Bush Is Not Entitled to the Credits He Seeks*

■ Collateral estoppel may bar the relitigation of an issue decided in a previous proceeding if (1) the issue necessarily decided at the previous

proceeding is identical to the one sought to be relitigated; (2) the previous proceeding resulted in a final judgment; and (3) the party against whom collateral estoppel is sought was a party to or in privity with a party to the previous proceeding. (*People v. Davis* (1995) 10 Cal.4th 463, 514–515, fn. 10 [41 Cal.Rptr.2d 826, 896 P.2d 119].) The doctrine is designed to promote judicial economy, preserve the integrity of the judicial system, and protect litigants from harassment by vexatious litigation. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Bush argues that collateral estoppel requires us to order him discharged from parole because the credits issue he raises was resolved adversely to the Board in a final judgment in a proceeding involving another prisoner serving a life sentence. We disagree.

The proceeding on which Bush relies is *In re Smith* (Super. Ct. Santa Clara County, 2006, No. 75911) (*Smith*), in which the superior court treated a motion to terminate parole as a petition for writ of habeas corpus and ordered parole terminated because the difference between the base term set by the Board and the time actually served by the prisoner exceeded the length of the parole period. The Sixth District Court of Appeal affirmed the judgment in an unpublished opinion following the People's appeal, and the Supreme Court denied review. (*In re Smith* (Sept. 5, 2007, H030201) [nonpub. opn.].)[5] The appellate decision in *Smith* considered the same points now raised by the Board, but concluded that custody credits in excess of the base term must be applied to a life prisoner's parole period under the authority of sections 1170, subdivision (a)(3) and 2900.5, subdivision (c).

Even if the minimal requirements for its application are satisfied, collateral estoppel should not be applied if considerations of policy or fairness outweigh its purposes as applied in a specific case. (*Vandenberg, supra,* 21 Cal.4th at p. 829.) "[A] particular danger of injustice arises when collateral estoppel is invoked by a nonparty to the prior litigation. [Citations.] Such cases require close examination to determine whether nonmutual use of the doctrine is fair and appropriate. [Citations.]" (*Id.* at pp. 829–830.) When an issue decided in a prior proceeding is a pure question of law rather than one of fact, a prior determination is not conclusive if injustice would result or if the application of collateral estoppel would be contrary to the public interest.[6]

---

[5] Although the decision in *In re Smith, supra,* H030201, is unpublished and has no precedential value, we take judicial notice of its contents under California Rules of Court, rule 8.1115(b)(1), which permits the citation of an unpublished opinion when it is "relevant under the doctrines of law of the case, res judicata, or collateral estoppel."

[6] Indeed, it is debatable whether the doctrine of collateral estoppel even applies to pure questions of law. (See *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 621 [41 Cal.Rptr.3d 686]; *People v. Conley* (2004) 116 Cal.App.4th 566, 571 [10 Cal.Rptr.3d 477]; *In re Pedro C.* (1989) 215 Cal.App.3d 174, 181 [263 Cal.Rptr. 428].)

(*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522].)

In *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 257 [5 Cal.Rptr.2d 545, 825 P.2d 438] (*Arcadia*), our Supreme Court applied this "public interest" exception in a case involving circumstances similar to those before us. Education Code section 39807.5, which allowed school districts to charge transportation fees to certain students, had been challenged in a prior taxpayer's suit, *Salazar v. Honig* (May 10, 1988, B026629 [nonpub. opn.]) (*Salazar*). (*Arcadia*, at p. 255.) The Court of Appeal in *Salazar* had declared the statute unconstitutional in an opinion that was ordered depublished and denied review by the Supreme Court. (*Arcadia*, at pp. 255–256.) Several school districts then filed a new and separate action to determine the facial validity of Education Code section 39807.5. (*Arcadia*, at p. 256.) The Supreme Court held that collateral estoppel did not preclude the districts in this new action from arguing in favor of the statute's constitutionality, even though the statute had been declared unconstitutional in *Salazar*: "The practical result of [applying collateral estoppel] would be that the constitutionality of [Education Code] section 39807.5 would never again be litigated. If . . . all of the school districts in the state of California are bound by the [unpublished *Salazar*] decision . . . then no school district is free either to charge a fee for home-to-school transportation or to assert the constitutionality of the statute. In that case, there would be *no opportunity* for anyone *ever* to challenge the legal grounds of the [de]published ruling [in *Salazar*]. Thus, in one fell swoop, by binding all the parties in the state who have any interest in the issue without naming them as parties to the first action, [the taxpayer plaintiff in *Salazar*] would have effectively prevented the constitutionality of this legislative enactment from ever being fully tested or defended." (*Arcadia*, at p. 258.) This was clearly contrary to the public interest, which required a final resolution of whether the fees were permissible. (*Ibid.*)

So too here. The question of what to do with credits in excess of a life prisoner's base term is an important one likely to recur in a number of cases. The issue has been addressed to date only by the court of appeal that decided *Smith*, in a decision that was not published and may not be cited for its precedential value. *Smith* was not even final until December 2007, after the petition for writ of habeas corpus was filed in this case. If we were to accept Bush's position, other Courts of Appeal, and ultimately, our Supreme Court, would be effectively deprived of the ability to reach the merits of this important issue of law. Such a result is not in the public interest. We decline to apply the doctrine of collateral estoppel in this case.

### III.  Disposition

The order to show cause is discharged. The petition for writ of habeas corpus is denied.

Simons, Acting P. J., and Stevens, J.,* concurred.

Petitioner's petition for review by the Supreme Court was denied July 9, 2008, S162361.

---

*Retired Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.