Filed 5/19/14

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ALBERT VALENCIA,<br><br>    Defendant and Appellant. | B245709<br><br>(Los Angeles County<br>Super. Ct. No. GA083664) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge. Affirmed with modifications.

    Richard Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

    Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Elaine F. Tumonis, Deputy Attorneys General, for Plaintiff and Respondent.

---

    [*]Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the indicated portions of pages 3-4.

Defendant, Carlos Albert Valencia, appeals from the November 2, 2012 judgment entered after he pled no contest to charges of: forgery; forged prescription; and transportation and possession for sale of hydrocodone and alprazolam. He pled no contest after his motion to suppress evidence was denied by the trial court. Defendant appeals under Penal Code section 1538.5, subdivision (m).[1] (*People v. Lloyd* (1998) 17 Cal.4th 658, 664-665; *People v. Panizzon* (1996) 13 Cal.4th 68, 74-75.) In the published portion of this opinion, we discuss issues of mootness concerning presentence credits and fines imposed for crimes committed after October 1, 2011. Specified offenses occurring after that date are subject to the 2011 Realignment Legislation. As will be noted, we conclude that any contention concerning inadequate presentence credits is moot. And, we conclude that the prosecutor's contention concerning inadequate fines, penalties and surcharges is not moot. Accordingly, we modify the judgment to impose additional fines, penalties and surcharges.

Filed on July 16, 2012, an information charged defendant with 14 felony counts: forgery (§ 470, subd. (d), count 1); forged prescription (Bus. & Prof. Code § 4324, subd. (a), count 2); drug possession, forged prescription (Bus. & Prof. Code § 4324, subd. (b), count 3); transportation or sale of a controlled substance--hydrocodone, hydromorphone hydrochloride, and promethazine with codeine (Health & Safety Code § 11352, subd. (a), counts 4, 8, 10, 13); possession for sale of a controlled substance--hydrocodone, hydromorphone hydrochloride, and promethazine with codeine (Health & Safety Code § 11351, counts 5, 9, 11); and possession for sale of designated controlled substance—alprazolam and temazepam (Health & Safety Code § 11375, subd. (b)(1), counts 6, 7, 12) As to counts 4, 8, 10 and 13, defendant allegedly offered to sale or sold more than 14.25 gram of a substance containing heroin.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

[The following paragraphs of the opinion are deleted from publication. See post at page 4 where publication is to resume.]

On August 8, 2012, defendant moved to suppress evidence seized during his detention pursuant to section 1538.5. He sought to suppress evidence of: any observations made by the police; all prescriptions recovered from his car; and all illegal narcotics recovered from his car including hydrocodone, alprazolam, hydromorphone hydrochloride, temazepam, and promethazine with codeine. Defendant argued the search of his car was unconstitutional because it was conducted pursuant to an illegal detention.

The trial court heard the suppression motion on October 22, 2012. The parties stipulated there was no arrest or search warrant. The trial court heard testimony from Deputy Scott Berner who searched defendant. Deputy Berner drove to a Target store in Rosemead on March 10, 2011, in response to a dispatcher's call. Deputy Berner noticed defendant's vehicle speeding through the intersection towards the Target store. Deputy Berner was informed a male was arriving at the store to pick up a possibly forged prescription. Deputy Berner next received updated information over the radio that the possible suspect was inside a vehicle that had pulled into a handicapped parking stall in front of the store. Deputy Berner saw a white man, later identified as Steven Feldman, exit the vehicle and enter the store. He waited for additional deputies to arrive and further information over the radio.

Once additional deputies arrived, Deputy Berner parked behind defendant's car. Deputy Berner did not use the patrol car siren. He also did not pull out his weapon. Deputy Berner testified: "[W]hen I made contact with [defendant], I asked him if he had anything illegal. He said no. I asked if I could search him. He said yes." Deputy Berner got defendant's wheelchair out of the back of the vehicle. Defendant maneuvered himself into the wheelchair. Next Deputy Berner searched defendant's person. Defendant was detained in the back seat of the patrol car. Then the informant, a store employee, stepped outside and spoke to Deputy Berner. Deputy Berner was advised he had detained the right person and vehicle. Deputy Berner received information over the

3

radio that Mr. Feldman was exiting the store. Deputy Berner approached the exit doors to detain Mr. Feldman. Deputy Berner next searched defendant's car. He found a camouflage duffle bag in the back seat. Inside the bag, Deputy Berner found numerous bottles of prescription pills.

The trial court denied defendant's suppression of evidence motion. The trial court found: Deputy Berner had sufficient cause to detain defendant; this was based on the information Deputy Berner received from the dispatcher over the radio; the dispatcher relayed the citizen informant's description of defendant's car, the vehicle license plate, and information that a white male came in to the store to pick up the forged prescription; Deputy Berner's patrol car pulled behind defendant's vehicle; and at this point defendant was detained. The trial court found: defendant freely consented to the search of his vehicle; there was no threat; and there was no indication "that [defendant's] will was in any way, shape, or form overcome" through anything Deputy Berner did.

[The balance of the opinion is to be published]

On November 2, 2012, defendant pled no contest to counts 1 through 10. The trial court dismissed counts 4, 8 and 10 pursuant to section 1385, subdivision (a). The trial court orally stated the probation report suggested defendant might have been using the prescription drugs for his own pain relief. (The clerk's minutes do not reflect any such reasons as required by section 1385, subdivision (a).) The prosecution has not appealed the partial dismissal order.) Counts 11 through 14 were dismissed pursuant to plea negotiations. Defendant was sentenced to two years, eight months consisting of the low term of two years for count 1 plus one-third the mid-term, or eight months, for count 2. Concurrent sentences were imposed for counts 3, 5 through 7 and 9. Defendant was sentenced on the seven counts to county jail pursuant to what is now section 1170, subdivision (h)(1). Defendant received credit for 235 days in presentence custody plus 235 conduct credits for a total of 470 days. Defendant was ordered to pay a: $240 restitution fine; $280 court operations assessment; $210 conviction assessment; and a

4

single $50 criminal lab fee plus penalty assessments. No post-incarceration period of supervision was imposed pursuant to what is now section 1170, subdivision (h)(5)(B).

Defendant filed his notice of appeal on November 30, 2012. After the notice of appeal was filed, we appointed counsel to represent defendant. After examination of the record, appointed appellate counsel filed a brief in which no issues were raised. Instead, appointed appellate counsel asked us to independently review the entire record on appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441-442. (See *Smith v. Robbins* (2000) 528 U.S. 259, 264.) On March 27, 2013, we advised defendant he had 30 days within which to submit by brief or letter any contentions or argument he wished us to consider. No response has been received. We have examined the entire record. No argument exists that would potentially be favorable to defendant on appeal. (*People v. Kelly* (2006) 40 Cal.4th 106, 112-113; *People v. Wende*, *supra*, 25 Cal.3d at p. 441.)

On August 28, 2013, we requested supplemental briefing on whether the trial court properly calculated defendant's presentence credit. The parties agree defendant should have been awarded 473 days of presentence custody credit instead of 470 days. But the issue is moot because defendant was released from the Los Angeles County Jail on July 3, 2013. In the past, prior to the adoption of the 2011 Realignment Legislation, issues raised by sentenced felons concerning presentence credits avoided mootness determinations on appeal in varying circumstances. For example, a defendant placed on probation was entitled to a correct computation of credits as he or she was still subject to court jurisdiction in the event of a violation. (§ 2900.5, subds. (c)-(d); see *People v. Riolo* (1983) 33 Cal.3d 223, 226.) Also, time served in state prison in excess of a determinate term was credited against the prisoner's parole period. (*In re Bush* (2008) 161 Cal.App.4th 133, 140-141; *In re Carter* (1988) 199 Cal.App.3d 271, 273.) Thus, when a prisoner received insufficient presentence credits and had completed his or her term, the inmate's release date from parole supervision would be advanced. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1183, fn. 4; *People v. Harris* (1987) 195 Cal.App.3d 717, 720, overruled on a different point in *People v. Arnold* (2004) 33 Cal.4th 294, 307.) Further, in a case where a defendant is sentenced to prison, if the presentence custody

5

exceeds the sentence, the entire term is deemed served. (Pen. Code, § 2900.5, subd. (a); see *In re Bush*, *supra*, 161 Cal.App.4th at pp. 140-141.) No fines have been imposed against which excessive time served in custody could apply. (Pen. Code, § 2900.5, subd. (a); *People v. Robinson* (2012) 209 Cal.App.4th 401; 406-407.) Thus, under varying circumstances, even when an accused had served an entire term, presentence credit issues were not always moot. None of these scenarios applies to defendant. As noted, defendant has served his entire sentence and is not subject to post-release supervision.

No period of post-incarceration supervision was ordered as permitted by Penal Code section 1170, subdivision (h)(5)(B). Because no prejudicial collateral consequences would be ameliorated by awarding defendant three additional days of presentence custody credit, the issue is moot. (See *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369; *People v. Lindsey* (1971) 20 Cal.App.3d 742, 744.)

We also requested briefing on whether the abstract of judgment should be modified. The abstract of judgment fails to reflect the oral pronouncement that the penalties and surcharge apply to the laboratory fee. The parties agree the abstract of judgment may be amended. In addition, the Attorney General argues three additional criminal laboratory fees should have been imposed by the trial court. We agree.

Defendant was convicted of two counts for violating Health and Safety Code section 11351 (counts 5 and 9). He also was convicted of two counts for violating Health and Safety Code section 11375, subdivision(b)(1) (counts 6 and 7). Defendant was subject to a Health and Safety Code section 11372.5, subdivision (a) $50 mandatory criminal laboratory analysis fee for *each* of the four counts under Health and Safety Code section 11372.5, subdivision (a). (*People v. Taylor* (2004) 118 Cal.App.4th 454, 456; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1413.) In addition, each criminal laboratory analysis fee is subject to penalties and a surcharge, which total $130 per $50 fine in Los Angeles County. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 863-864.) The trial court orally imposed only a single $50 criminal laboratory analysis fee "plus penalties and assessments."

6

DISPOSITION

The judgment is modified to impose three additional $50 criminal laboratory analysis fees together with penalties and surcharges.  The abstract of judgment shall be amended to reflect four criminal laboratory analysis fees together with penalties and surcharges.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the clerk of the superior court shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

CERTIFIED FOR PARTIAL PUBLICATION

TURNER, P. J.

We concur:

MOSK, J.

KRIEGLER, J.

7